**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LAREY C. ANDERSON, | ) | CASE NO. 3:07-CV-02337 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) | |
| | ) | MAGISTRATE JUDGE GREG WHITE |
| KELLEH KONTEH, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Petitioner, Larey C. Anderson ("Anderson"), challenges the constitutionality of his conviction in the case of *State v. Anderson*, Lucas County Common Pleas Case Nos. CR03-1707 and CR03-2288. Anderson, *pro se*, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on August 1, 2007, with the United States District Court for the Northern District of Ohio. On December 4, 2007, Respondent filed her Answer/Return of Writ. (Doc. No. 9.) Anderson filed his Traverse on February 21, 2008. (Doc. No. 36.) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Anderson's petition be DENIED.

### I. Procedural History

**A.  Conviction**

The Lucas County Grand Jury charged Anderson with murder in violation of Ohio

Revised Code ("O.R.C.") § 2923.02.[1] (Doc. No. 9-2, Exh. 1; Doc. No. 18.)

Anderson, represented by counsel Spiros Cocoves, pled "not guilty" and the matter proceeded to a jury trial. The jury found Anderson guilty of felony murder under O.R.C. § 2923.02(B). (Doc. No. 9-2, Exh. 2; Tr. 793.) On July 30, 2003, the trial court sentenced Anderson to an indefinite term of fifteen (15) years to life in prison. *Id*.

**B.     Direct Appeal**

On September 18, 2003, Anderson, represented by new counsel Carol Damrauer, filed a Motion for Delayed Appeal. (Doc. No. 9-2, Exh. 4.) On October 29, 2003, the Court of Appeals for the Sixth Appellate District ("state appellate court") granted Anderson's motion. (Doc. No. 9-2, Exh. 5.) On May 9, 2005, Anderson filed a brief in which he raised the following assignments of error: (1) his conviction for murder was against the manifest weight of the evidence; (2) the trial court erred when it denied his motion made pursuant to Ohio Criminal Rule 29 ("Crim. R. 29");[2] and (3) the prosecution engaged in misconduct. (Doc. No. 9-2, Exh. 6.) On April 7, 2006, the state appellate court affirmed Anderson's convictions. (Doc. No. 9-2, Exh. 8.)

On April 27, 2006, Anderson, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 9-2, Exh. 9.) Anderson raised the following assignments of error: (1) his

---

[1] Initially, Anderson was charged only with purposeful murder in violation O.R.C. § 2923.02(A) in Case No. CR03-1707. Prior to trial, the grand jury issued a second indictment, Case No. CR03-2288, for an alternative charge of felony murder in violation of O.R.C. § 2923.02(B). The two cases were consolidated by order of the trial court. (Doc. No. 18 at 4.)

[2] Under Crim. R. 29, a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

conviction was against the manifest weight of the evidence and was not supported by sufficient evidence, because he established each element of self-defense; (2) the prosecution violated his due process rights by making improper statements that deprived him of a fair trial; and (3) the prosecution failed to carry its burden with respect to each element of the offense of murder. (Doc. No. 9-2, Exh. 10.) On August 2, 2006, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 9-2, Exh. 11.)

**C.     Federal Habeas Petition**

On August 1, 2007, Anderson filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> Ground One: His conviction was against the manifest weight of the evidence.
>
> Ground Two: The trial court erred by denying his Crim. R. 29 motion.
>
> Ground Three: He was deprived of a fair trial due to improper and prejudicial statements of the prosecution.

(Doc. No. 1-2.)

Anderson's Traverse, filed on February 21, 2008, is a verbatim copy of the brief he filed before the Supreme Court of Ohio. (*Compare* Doc. No. 36, *with* Doc. No. 9-2, Exh. 10.)

**II.  Summary of Facts**

The state appellate court summarized the facts underlying Anderson's conviction as follows:

> The following undisputed facts are relevant to the issues raised on appeal. This case arises from a fatal incident occurring on March 12, 2003, in Toledo's Old West End. Appellant had an entertainment room on the second floor of his residence. This room featured an assortment of stereo equipment, sofas and cocktail tables. Appellant had a penchant for entertaining in this room. The room was referred to as the "boom boom room."

3

> On March 12, 2003, Adrian Solomon, an acquaintance of appellant, asked appellant if he and his girlfriend, Shalaundra Jordan, could come by and party in the "boom boom room." Appellant agreed. Approximately half a dozen of appellant's acquaintances and/or friends came over and gathered in the "boom boom room."
>
> Crack cocaine, marijuana and alcohol were among the substances present and being consumed. Appellant smoked crack cocaine. Appellant's nickname amongst several of his guests was, "Crackhead Larey." Solomon, the decedent also consumed drugs at the party.
>
> At some point after the group had been partying and taking drugs, Jordan damaged some of appellant's personal property. This incident led to a heated verbal exchange and physical altercation between appellant and Solomon. During this altercation, appellant sustained an injury to his forehead and was bleeding. As a result of the melee, appellant demanded that Solomon and Jordan leave the premises.
>
> Solomon and Jordan went outside to the front sidewalk adjacent to the street. During this time, appellant went back upstairs. Solomon and Jordan became upset. They had no transportation home on the cold winter evening. They were yelling and causing commotion outside.
>
> Appellant returned downstairs, went into the kitchen, opened a drawer, and grabbed a serrated knife. Appellant took the knife and went to the front of his home. Solomon was on the front steps outside of appellant's residence. While standing in or near the entry door area behind a front steel security door, appellant reached out with the serrated knife and forcefully stabbed Solomon at the base of his neck, piercing the bone and the aorta. Solomon bled to death.

(Doc. No. 9-2, Exh. 8.)

### III. Procedural Default

The Respondent contends that Anderson's third ground for relief is procedurally defaulted. (Doc. No. 9 at 7-12.) Specifically, the Respondent argues that Anderson's failure to object at trial to the allegedly improper statements made by the prosecution renders his claim procedurally defaulted. *Id.* In his Traverse, Anderson conceded that contemporaneous objections were not made, but nevertheless, argued that the prosecution's statements deprived

4

him of a fundamentally fair trial. (Doc. No. 36 at 8.)

**A.     Standard**

Procedural default occurs when: (1) a petitioner failed to present his or her federal constitutional claim(s) to the state courts in the manner required by state procedural law; and (2) the state courts imposed the procedural bar of refusing to review the merits of the alleged error. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 729-32 (1991).

In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit established a four-step inquiry that guides a district court when a respondent argues that a habeas claim is precluded by a petitioner's failure to observe a state procedural rule. First, "the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, "the court must decide whether the state courts actually enforced the procedural sanction." *Id*. The last state court rendering a reasoned judgment on the matter must "clearly and expressly" state that its judgment rests on such a procedural bar for the doctrine of procedural default to apply. *Coleman*, 501 U.S. at 750 (1991).[3] Third, "the court must decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Maupin*, 785 F.2d at 138. A state rule is adequate if it is regularly or consistently applied by the state court, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is

---

[3] Furthermore, a state court's review of an otherwise procedurally defaulted claim to determine whether the error, if any, constituted a manifest miscarriage of justice does *not* revive the defaulted claim for purposes of federal habeas corpus review. *Scott v. Mitchell*, 209 F.3d 854, 868 (6th Cir. 2000) (emphasis added); *see also Seymour v. Walker*, 224 F.3d, 542, 557 (6th Cir. 2000) (a state appellate court's plain error review does not constitute waiver of state procedural rules).

independent if it does not depend on a federal constitutional ruling. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

Finally, a petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006), *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003), *citing Strickler v. Greene*, 527 U.S. 263, 289 (1999).

**B. Ground Three: Prosecutorial Misconduct**

Anderson argues that the prosecution made a "highly improper statement" during closing arguments. (Doc. No. 1-2 at 15.) Anderson takes issue with the prosecutor's statement that "all the essential elements are uncontested." (Tr. 664.) It is undisputed that neither Anderson nor his trial counsel objected to the allegedly improper statements proffered by the prosecution at trial. (Doc. No. 36 at 8.)

The state appellate court, in addressing this argument, expressly found that "[n]o

objection was made." (Doc. No. 9-2, Exh. 8.) Under Ohio law, the contemporaneous objection rule provides that "the fundamental rule is that an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." *Schade v. Carnegie Body Co.*, 70 Ohio St. 2d 207, 210, 436 N.E.2d 1001 (Ohio 1982); *accord State v. Powers*, 106 Ohio App. 3d 696, 699, 667 N.E.2d 32 (Ohio Ct. App. 1995); *State v. Price*, 1985 Ohio App. LEXIS 7563 (Ohio Ct. App. 1985). Thus, the first prong of the *Maupin* test is satisfied, as there is a contemporaneous objection rule in Ohio that Anderson failed to follow.

The state appellate court enforced its procedural sanction. The mere fact that the state appellate court proceeded to conduct a "plain error" review is immaterial.[4] Such a review does not negate the fact that the state appellate court actually enforced the procedural sanction. *See Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000). "Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules." *Id*. at 557. In fact, the Sixth Circuit has stated that a state appellate court's resort to plain error review is indicative of the fact that it declined to review a an appeal on the merits and enforced its procedural sanction. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Further, the Sixth Circuit has found that Ohio's contemporaneous objection rule satisfies the third prong of the *Maupin* test and constitutes an adequate and independent state ground that bars federal habeas review. *Scott v. Mitchell*, 209 F.3d 854, 870 (6th Cir. 2000); *see also Hinkle*, 271 F.3d at 244.

---

[4] Ohio courts invoke "[t]he plain error rule ... only in exceptional circumstances to avoid a miscarriage of justice." *State v. Long*, 372 N.E.2d 804, 53 Ohio St.2d 91 (Ohio 1978), *quoting United States v. Rudinsky*, 439 F. 2d 1074, 1076 (6th Cir. 1971). Plain error is established if the error clearly would have affected the outcome of the trial. *Id*. at 808.

Therefore, because the first three prongs of the *Maupin* test have been satisfied, Anderson's claim alleging prosecutorial misconduct is procedurally defaulted *unless* he can demonstrate cause for the default and actual prejudice.  Anderson has not explained why he or his counsel failed to comply with the contemporaneous objection rule, nor has he presented any other reason sufficient to constitute "cause."  Even if Anderson had alleged that his counsel's ineffective assistance constituted cause, "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006); *see also Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005). Also, ordinary attorney ignorance or inadvertence does not satisfy the "cause" requirement "because the attorney is the petitioner's agent when acting or failing to act, in furtherance of the litigation."  *Coleman*, 501 U.S. at 753.

Furthermore, assuming *arguendo* that Anderson has demonstrated "cause," the prosecutor's statements that Anderson had not contested any of the elements necessary to sustain a conviction did not result in actual prejudice.  Anderson asserted that he acted in self-defense and/or that he did not act purposefully, but he did in fact concede that he inflicted the fatal knife wound.[5]  (Tr. 555-63.)  Self-defense is an affirmative defense and the burden of proof rests with the defendant.  *See State v. Palmer*, 80 Ohio St. 3d 543, 563, 687 N.E.2d 685 (Ohio 1997). Therefore, Anderson essentially conceded that he caused the death of the victim, but contended his conduct was not criminal as he had a good faith belief that he was in imminent danger of

---

[5] Anderson argued that the victim charged at him while Anderson held a knife to repel the attack.  (Tr. 557.)

8

death or great bodily harm with no duty to retreat. *Id*. Anderson appears to construe the prosecution's statement that Anderson conceded all the elements of the crime as the equivalent of stating that Anderson conceded his guilt when, in fact, the prosecution specifically mentioned Anderson's claim of self-defense in its closing argument. (Tr. 669.) In addition, the trial court *twice* advised the jury that closing arguments do not constitute evidence. (Tr. 636, 745.) As such, the prosecutor's statements cannot reasonably be construed to have altered the outcome of the trial and, therefore, did not actually prejudice Anderson. This finding is consistent with the state appellate court's plain error review, as that court also found the alleged prosecutorial misconduct did not alter the outcome of the trial, there being no dispute that Anderson stabbed the victim. (Doc. No. 9, Exh. 8.)

For the foregoing reasons, Anderson's third ground for relief is without merit.

### IV. Review on the Merits

As Respondent has not argued that Anderson's remaining grounds for relief were procedurally defaulted, they will be addressed on the merits. This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, because Anderson filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of the AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

**B.      Grounds One and Two: Manifest Weight of the Evidence and Sufficiency of the Evidence**

In ground one of his petition, Anderson argues that his conviction was against the manifest weight of the evidence. (Doc. No. 1.) In ground two, Anderson asserts that the trial court erred by denying his Crim R. 29 motion for judgment of acquittal. *Id*. Pursuant to Crim. R. 29, the trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

Thus, Anderson's petition contends that his conviction was both against the manifest weight of the evidence *and* that it was not supported by sufficient evidence. (Doc. No. 1.) However, this Court may only review Anderson's sufficiency of the evidence claim, as manifest weight claims are not cognizable on federal habeas review.[6] *See, e.g.*, *Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin,* 2006 WL 2090093 at *6 (S.D. Ohio 2006).

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every element necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for

---

[6] As explained by the U.S. District Court for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin,* 2006 WL 2090093 at *7 (S.D. Ohio 2006), *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983). Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Anderson's conviction was against the manifest weight of the evidence. *Id*.

determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992).

A jury convicted Anderson of murder in violation of O.R.C. § 2903.02(B), which prohibits a person from causing ."the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree," excluding manslaughter.[7] (Tr. 793.) Under Ohio law, a felonious assault – defined as knowingly causing, or attempting to cause, physical harm to another by means of a deadly weapon – satisfies the underlying felony element of felony murder. *See, e.g., State v. Miller*, 96 Ohio St. 3d 384, 775 N.E.2d 498 (Ohio 2002). "[A] person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." *Id*.

After reviewing the trial testimony, the Court finds that there was sufficient evidence that

---

[7] The jury also found Anderson was not guilty of murder in violation of O.R.C. § 2903.02(A), which prohibits a person from purposely causing the death of another, and not guilty of voluntary manslaughter. (Tr. 792.)

would allow a rational trier of fact to have found all the essential elements of the crime. Anderson testified that, after he and the victim engaged in a fist-fight in his home, the victim left his house but remained in or near his yard. (Tr. 553, 555.) At trial, Anderson also testified that he was "not going out there with nothing in [his] hand" and proceeded to retrieve a serrated knife from the kitchen. (Tr. 553-54.) Anderson further testified that he was attempting to close his security door, which he stated was open at the time, when the victim "rushed" him. (Tr. 557.) Anderson stated that he "got him [the victim] with a knife." (Tr. 557.)

Wayne Phillips, a Toledo police officer, testified that he responded to an emergency call concerning a stabbing and interviewed Anderson on the night the stabbing occurred. (Tr. 234-43.) According to Officer Phillips, Anderson stated that he locked the door after the victim departed the house. (Tr. 243.)

An eye-witness, Linda Brown, testified that Anderson had locked the screen door to his house after the victim left, and then proceeded to close the security door. (Tr. 325, 333.) She testified that the victim was not injured when he left the house. (Tr. 338.)

Another eye-witness, Shalaunda Jordan, testified that she left the house with the victim, who had no injuries at that point, that the security door was closed after they left, and that she heard the door latch behind them. (Tr. 381-82.) Jordan testified that before they reached the sidewalk, Anderson started yelling at the victim from inside his house and behind the closed security door. (Tr. 382-83.) Jordan further testified that the victim returned to the house and attempted to open the security door by pulling on it, but the door was not opening. (Tr. 383.) Jordan then testified that the door opened and a hand reached out from the door. (Tr. 384.) She stated that the victim walked back towards her and informed her that he had been stabbed. *Id*.

Based on the evidence above, the state appellate court reasonably concluded that "the evidence is legally sufficient to enable a rational trier of fact to find the elements proven beyond a reasonable doubt." (Doc. No. 9, Exh. 8 at 8.) The state appellate court's opinion constitutes a reasonable application of clearly established federal law. The evidence was sufficient to show that Anderson knowingly attempted to cause harm to the victim and that such action proximately resulted in the victim's death. Although Anderson asserts that he was acting in self-defense, it was well within the jury's discretion to weigh the evidence and the credibility of the witnesses. Because there was testimony from several witnesses that the security door to Anderson's home was locked after the victim left the house, the jury could reasonably find that Anderson was not acting in self-defense at the time of the stabbing. It would be inappropriate for this Court to substitute its judgment for that of the jury.

Accordingly, Anderson's conviction was supported by sufficient evidence and Anderson's claim is without merit.

### V. Conclusion

For the foregoing reasons, the Magistrate Judge recommends Anderson's Petition be DENIED.

> /s/ *Greg White*
> U.S. Magistrate Judge

Date: March 11, 2008

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).